CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

AUG 25 2004

JOHN F CORCORAN. CLERK
BY: K Botron
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

RICHARD B. PENCE,                          )
                                           )
          Plaintiff,                       )
                                           )
v.                                         )        Civil Action No. 5:04CV00075
                                           )
TENNECO AUTOMOTIVE OPERATING               )
COMPANY, INC.,                             )
trading as Walker Manufacturing and/or     )
Tenneco Automotive,                        )
a Delaware corporation,                    )
                                           )
          Defendant.                       )

COMPLAINT

(Jury Trial Demanded)

The plaintiff, Richard B. Pence, by counsel, complaining of the defendant, Tenneco
Automotive Operating Company, Inc., alleges and says:

NATURE OF CLAIMS

1.      This is an action under Title I of the Americans With Disabilities Act of 1990, as
amended, 42 U.S.C. § 12101, et seq. (hereinafter "ADA"), Title I of the Civil Rights Act of 1991,
and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615, et seq. (hereinafter "FMLA") to
correct and remedy unlawful employment practices in violation of the ADA and in violation of the
FMLA and to make whole and compensate the plaintiff.  The defendant Company removed the
plaintiff from his job for a forced medical examination, refused to reinstate the plaintiff to his job
following compliance with the forced referral and terminated the plaintiff from his job with the
defendant because of disability and/or for retaliatory reasons all in violation of the ADA, and/or in
violation of the FMLA.

JURISDICTION AND VENUE

2.      This court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and
1343, and pursuant to 42 U.S.C. § 12117, which incorporates by reference 42 U.S.C. § 2000e-

5(f)(1) and (3), pursuant to 42 U.S.C. § 1981a, and 29 U.S.C. § 2617.  The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.      The unlawful employment practices complained of herein occurred, and the employment records relevant to this matter are maintained and administered, within the Western District of Virginia, and venue is proper within this District and Division pursuant to 42 U.S.C. § 2000e-5(f)(3) as adopted by the terms of 42 U.S.C. § 12117(a) and 28 U.S.C. § 1391(b) and (c).

PARTIES

4.      The plaintiff is a male citizen and resident of Rockingham County, Virginia.

5.      The defendant Tenneco Automotive Operating Company, Inc., trading as Tenneco Automotive and/or Walker Manufacturing (hereinafter referred to as the "Company") is a corporation existing under and by virtue of the laws of the State of Delaware, with an automotive exhaust system manufacturing facility located in Harrisonburg, Virginia.  The Company is authorized to transact business within the Commonwealth of Virginia as a foreign corporation.  At all times pertinent hereto, the Company was, is and has been an employer engaged in an industry affecting commerce with seven hundred or more employees at its Harrisonburg, Virginia plant for each working day in each of twenty or more calendar weeks in each relevant calendar year and meets the definition of "employer" set forth in the ADA.

6.      At all relevant times, the Company has been a covered entity under 42 U.S.C. § 12111(2) and the Company was the "employer" of the plaintiff within the meaning of 29 U.S.C. § 2611(4)(A).

ADMINISTRATIVE REQUIREMENTS

7.      On or about February 6, 2004, the plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination that satisfied the requirements of 42 U.S.C. § 2000e-5 and 42 U.S.C. § 12101, et seq.  The charge of discrimination was filed timely and included the discrimination complained of herein.

8.   On May 27, 2004, the EEOC mailed the plaintiff a Dismissal and Notice of Rights (the "Notice") relating to the Charge, certifying that the plaintiff could file a civil action against the Company within ninety (90) days from his receipt of the Notice.

9.   The plaintiff received a copy of the Notice on or after June 1, 2004, and the plaintiff has instituted this action timely.

<u>FACTUAL ALLEGATIONS</u>

10.   On or about January 19, 1972, the plaintiff commenced his employment with the defendant Company or its predecessor in interest at the Company's Harrisonburg, Virginia plant facility.  During most of the plaintiff's period of employment with the defendant Company, he was a welder.  In that capacity he regularly received good performance reviews, along with consistent merit pay increases.  Prior to the termination of the plaintiff's employment, his most recent performance evaluation by the defendant Company in February 2003 rated the plaintiff's performance as either exceeding requirements or meeting requirements.  The plaintiff exceeded requirements in the category of following policies.

11.   The defendant Company purports to maintain a policy encouraging employees to raise concerns regarding employment issues in an open manner.  The plaintiff regularly took advantage of this right to raise employment concerns during his more than three decades of employment at the Harrisonburg plant.  The plaintiff had raised concerns relating to employee benefits for retirees, which were being severely curtailed by the defendant Company beginning in the summer of 2003.  In September 2003, the plaintiff also raised concerns with the defendant Company's supervisory staff regarding inappropriate intimidating and threatening conduct by a co-worker directed towards him.  Despite the plaintiff's legitimate concerns over the inappropriate conduct aimed at the plaintiff, nothing was done by the defendant Company to address the matter.

12.   On October 21, 2003, the plaintiff was instructed to go to the office of Rod Little, the human resources manager for the defendant at its Harrisonburg plant facility.  The plaintiff was confronted by two hired security guards and Mr. Little.  At that point, Mr. Little told the plaintiff

that he was to be removed from the plant immediately, and that he was required to see a psychologist for a mental examination. The only reasons offered for the forced mental examination was Mr. Little's statement that the plaintiff allegedly told unidentified co-workers that he was going to Washington, D.C. to put a lien on Mr. Little's property and that he allegedly had unidentified "anti-government views." The plaintiff had made no such statements concerning Mr. Little's property. Mr. Little at no time referred to any allegedly threatening statements, nor had the plaintiff made any such statements. The plaintiff was not told what "views" the defendant Company was relying on as part of the purported basis to support its removal of him from his job.

13.     Mr. Little further told the plaintiff that the defendant Company required that plaintiff contact the defendant Company's Employee Assistance Program coordinator by October 22, 2003 to set up a series of appointments with a psychologist to evaluate the plaintiff's mental condition. Mr. Little gave the plaintiff a memorandum concerning that required contact. A true copy of the memorandum is attached hereto marked Exhibit 1. The plaintiff was advised that he was not to return to the defendant Company until he had been given approval by the defendant Company.

14.     At the October 21, 2003 meeting, Mr. Little also required the plaintiff to sign a form without giving the plaintiff a copy or allowing him to read it. The form the plaintiff was not allowed to read was a two page authorization form for disclosure of certain health information. A true copy of the form is attached hereto marked Exhibit 2. The stated purpose on the form was for determining compliance or non-compliance with the mandatory referral by the defendant Company of the plaintiff to the psychologist. Only contacts with the EAP coordinator, participation or non-participation in the recommended plan of action or continuation or non-continuation in recommended plan of action were authorized to be disclosed to the defendant Company.

15.     Pursuant to representations by the defendant Company through its policy statements in effect at the time of the removal of the plaintiff from his job, the Employee Assistance Program ("EAP") was to operate "in an atmosphere of privacy and confidentiality." The policies further provide that "[a]ll contacts are handled with complete confidentiality and only the individual and the counseling service are involved." A true copy of the defendant Company's policy relating to the

- 4 -

EAP is attached hereto marked Exhibit 3.

16.     The defendant Company placed the plaintiff on forced medical leave of absence, removed him from his job and forced him to contact the EAP coordinator and a psychologist specially employed by the defendant Company for a mental evaluation.

17.     The plaintiff was forced to remain in the office with the security guards for approximately 20 minutes while Mr. Little and one or more other employees cleaned out the plaintiff's locker.  The plaintiff then was escorted by the guards to his vehicle in the defendant Company's parking lot.

18.     The plaintiff fully complied with the forced medical/psychological evaluation referral, attending and cooperating with the mental/psychological examinations by the psychologist to whom the EAP coordinator, ValueOptions, Inc., referred the plaintiff.

19.     On November 3, 2003, the plaintiff completed the last of the required three evaluation sessions with the psychologist to whom the plaintiff was referred by ValueOptions.  The psychologist found that the plaintiff was not a threat to himself or others.  He further found that the plaintiff was not psychotic, was oriented, and was cooperative.  The psychologist found no diagnosable mental disorder.

20.     The psychologist reported his findings to ValueOptions on November 3, 2003, which in turn provided such findings to the defendant Company.

21.     During the psychological evaluation sessions, the psychologist specially employed by the defendant Company through ValueOptions revealed to the plaintiff that the defendant Company wanted him to find that the plaintiff was "crazy" or "nuts" so that it could terminate his employment.  He further revealed to the plaintiff his doubt that the defendant Company would pay for the evaluation sessions because he had not found that the plaintiff had a diagnosable mental condition or disorder.

22.     At the third and final evaluation session on November 3, 2003, the plaintiff presented the psychologist he was forced to see and who had evaluated his mental condition with

FMLA certification forms provided to him from the defendant Company. The psychologist refused to sign or fill out the forms because he had not found any diagnosable mental condition, problem or disorder. Instead, he wrote the letter which he presented to ValueOptions on November 3, 2003. A true copy of the letter is attached here to marked Exhibit 4. In addition, the psychologist confirmed with the employer, through ValueOptions, the plaintiff's compliance with the referral, and during the course of the examinations, he confirmed and reported the plaintiff's attendance and cooperation with the referral.

23.     The plaintiff's desire to return to work was communicated to the defendant Company on November 3, 2003 and thereafter. The defendant Company purposefully did not respond to the plaintiff's request.

24.     After learning that the plaintiff had not been diagnosed with a mental disorder and that he desired to return to work, the defendant Company discussed the plaintiff's condition and request to return to work with ValueOptions. Such discussions exceeded the scope of any disclosure authorization form signed unwittingly by the plaintiff, and were not based on an actual medical/mental examination of the plaintiff. At the time of these discussions, the defendant Company was aware that the plaintiff intended to retain counsel to assist him with the matters arising from its unfounded forced medical examination and its refusal to allow him to return to work.

25.     Despite the report from the psychologist that he had found no mental disorder exhibited by the plaintiff, and without any medical or mental evaluation of the plaintiff suggesting or supporting a contrary conclusion, the defendant Company, through its agents and employees, took the unfounded and discriminatory position that the plaintiff was a "potential danger" to others. Contrary to this unfounded and discriminatory position, the plaintiff was not a danger, or a potential danger to anyone, and had never engaged in any conduct which would support such a stereotypical conclusion.

26.     Despite the fact that the plaintiff had been referred for a mental evaluation, not treatment, unbeknownst to the plaintiff in late December 2003, the defendant Company, through its agents and employees, took the position that the plaintiff was not amenable to treatment and would not be allowed to return to work at the defendant Company as a result.  The plaintiff had no mental disorder and was in need of no treatment.

27.     By letter dated December 22, 2003, received by the plaintiff on Christmas Eve, December 24, 2003, the defendant Company terminated the plaintiff's employment without just cause and for the pretextual reason that the plaintiff had engaged in undefined threatening or intimidating conduct on October 17, 2003.  The plaintiff had engaged in no such behavior. Moreover, the defendant Company applied the policy relating to alleged intimidating or threatening behavior in a discriminatory manner based on disability or its perception of disability.

28.     During the period from the unlawful removal of the plaintiff from his job on October 21, 2003 through the unlawful termination of his employment on December 22, 2003, the defendant Company treated the leave as medical and disability leave, and paid the plaintiff disability pay for his forced absences.

29.     There was no legitimate job-related basis and business necessity for the illegal forced mental examination of the plaintiff, or for the failure to return the plaintiff to his job following notice to the defendant Company of the results of the evaluation by the Company-employed psychologist on November 3, 2003.

30.     The effect of the practices complained of above has been to deprive the plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee in violation of the ADA and/or the FMLA.

31.     The alleged reasons for removing the plaintiff from his job on October 21, 2003, for refusing to reinstate the plaintiff to his job following the psychological evaluation and for terminating the plaintiff's employment on December 22, 2003 were mere pretext for the real reasons, namely, the intentional discrimination and/or retaliation by the defendant Company against

the plaintiff herein described.  In the alternative, the Company's reasons for its conduct were mixed with impermissible reasons based on disability.

32.     The Company's acts and practices described above were intentional and were performed with malice and/or reckless indifference to the plaintiff's federally protected civil rights, within the meaning of § 102(b)(1) of the Civil Rights Act of 1991.

33.     At all relevant times, the conduct alleged herein by the defendant Company was undertaken by and through its agents and/or employees who were acting during the course and within the scope of their agency or employment.

FIRST CLAIM FOR RELIEF

(Violation of the ADA-Removal, Refusal to Reinstate and Termination)

34.     The plaintiff incorporates and realleges paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35.     At all times relevant to the matters alleged herein, the plaintiff was a qualified individual with a disability within the meaning of the ADA.  The defendant Company regarded the plaintiff as being disabled, and being substantially impaired in major life activities, when in fact no such impairments existed, or any impairment existed only by virtue of the defendant Company's reaction to his actual condition, or the plaintiff was treated as having a substantially limiting impairment.  Among other disabilities the defendant Company regarded the plaintiff as having, the defendant Company falsely regarded the plaintiff as having a severe mental disorder which the Company further falsely perceived made him a danger to others, and the inability to work without posing a danger to others in a broad range of jobs, even though such perceptions were without basis in fact.

36.     The defendant Company, through its agents and employees, who were acting within the scope and during the course of their employment or agency at all relevant times, has intentionally discriminated against the plaintiff during the course of his employment, and in the removal from, refusal to reinstate him to and termination of his employment on the basis of disability.  In addition, the defendant Company has selectively and inconsistently applied personnel

policies against the plaintiff on the basis of disability in violation of the ADA.

37.    This discrimination was with respect to the plaintiff's terms, conditions and privileges of employment, resulted in the removal from his job, the refusal to reinstate the plaintiff to his job, and the subsequent termination of the plaintiff from his job as welder with the defendant Company and constituted a violation of the ADA.

38.    As a direct and proximate result of the intentional discriminatory acts and practices of the defendant Company, its agents and employees, the plaintiff has suffered and continues to suffer injury, including loss of employment, past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining re-employment, embarrassment, damage to his reputation and other past and future pecuniary losses.

SECOND CLAIM FOR RELIEF

(Violation of the ADA-Forced Mental Examination)

39.    The plaintiff incorporates and realleges paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.    The forced mental/psychological examination of the plaintiff required by the defendant Company was not job-related and consistent with business necessity, and was in violation of the plaintiff's rights under the ADA.

41.    The defendant Company's violation of 42 U.S.C. § 12112(d)(4) in forcing a mental examination of the plaintiff, and/or rejecting the results of such examination and arriving at an unfounded, discriminatory conclusion not based on the personal examination of the plaintiff by a psychologist, constituted discrimination against the plaintiff under the ADA, whether or not he was disabled within the meaning of the ADA, and resulted in the removal of the plaintiff from his employment, the refusal to reinstate him to his job and the ultimate termination of the plaintiff's employment.

42.   As a direct and proximate result of the intentional discriminatory acts and practices of the defendant Company, its agents and employees described herein the plaintiff has suffered and continues to suffer injury, including loss of employment, past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, relocation costs, embarrassment, damage to his reputation and other past and future pecuniary losses.

## THIRD CLAIM FOR RELIEF

### (Retaliation and Interference under the ADA)

43.   The plaintiff incorporates and realleges paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.   The plaintiff opposed the forced removal from his job, the forced mental evaluation and the refusal to return him to his job, and communicated his opposition to the defendant Company, through its agents and employees.  Prior to its decision to terminate the plaintiff's employment, the defendant Company was made aware that the plaintiff intended to seek legal counsel in order to be reinstated to his job and to obtain a remedy for the defendant Company's illegal conduct.

45.   The defendant Company discriminated against and retaliated against the plaintiff because he opposed the conduct by the defendant Company made unlawful under the ADA, and the defendant Company interfered with the exercise of the plaintiff's rights under the ADA, in the defendant Company's refusal to reinstate the plaintiff on or after November 3, 2003, as well as in the termination of the plaintiff's employment, all in violation of 42 U.S.C. § 12203(a) and (b).

46.   As a direct and proximate result of the intentional discriminatory and retaliatory acts and practices of the defendant Company, its agents and employees set forth herein, the plaintiff has suffered and continues to suffer injury, including loss of employment, past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, relocation costs, embarrassment, damage to his reputation and

other past and future pecuniary losses.

## FOURTH CLAIM FOR RELIEF

### (Violation of the FMLA)

47.   The plaintiff incorporates and realleges paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.   The plaintiff was an eligible employee under the FMLA, having satisfied all of the necessary criteria for coverage and protection under the FMLA.  The plaintiff had sufficient leave time available under the FMLA as of October 21, 2003 to cover all of the absences necessitated by the forced medical leave required by his employer.

49.   Due to the psychological examinations to which the plaintiff was forced by the defendant Company to submit, and the medical leave of absence necessitated as a result, the plaintiff had a serious health condition within the meaning of the FMLA, for which the plaintiff was protected under the FMLA, including the regulations at 29 C.F.R § 825.114.

50.   The certifications of compliance with the forced mental examinations, and the psychologist's letter and notice of his findings to the defendant Company, through its agents and employees on November 3, 2003 constituted certification of the plaintiff's condition and entitlement to leave, to the extent certification is required by the FMLA in this situation.

51.   On November 3, 2003 at the very latest, the plaintiff was entitled to immediate reinstatement to his position or a comparable position at the defendant Company.  The defendant refused to allow the plaintiff to return to his position as welder at the defendant Company's plant facility in Harrisonburg, Virginia despite his compliance with the mandatory referral for the psychological evaluations.  The refusal to reinstate the plaintiff to his job following notice of the psychologist's findings on November 3, 2003, the reliance on unsubstantiated opinions without actual examination of the plaintiff, and the subsequent termination of the plaintiff from his job constituted the interference with, restraint of and/or denial by the Company of the plaintiff's rights,

including his rights to be restored to his position or to a comparable position, all in violation of 29 U.S.C. § 2615 (a)(1).

52.    The defendant Company's conduct interfered with, denied or restrained the plaintiff's rights under the FMLA, in violation of the FMLA.

53.    The plaintiff objected to and opposed the Company's conduct which violated and is made unlawful by the FMLA. The defendant Company refused to reverse the removal action or to restore the plaintiff to his position in violation of the FMLA.

54.    The plaintiff advised the defendant Company of the plaintiff's intention to pursue his rights arising from the refusal to reinstate the plaintiff to his job.

55.    On or around December 22, 2003, the defendant Company terminated the plaintiff's employment in violation of 29 U.S.C. § 2615(a)(1) and (2).

56.    The conduct by the defendant Company, through its agents and employees, described herein was willful, subjecting the defendant Company to liquidated damages.

57.    As a direct and proximate result of the acts and practices of the defendant Company, its agents and employees in violation of the FMLA the plaintiff has suffered and continues to suffer injury, including loss of employment, past and future loss of income and other employment benefits, as well as other wages and benefits denied or lost and other past and future pecuniary losses.

WHEREFORE, the plaintiff demands judgment against the defendant Tenneco Automotive Operating Company, Inc., as follows:

(a)    Declaring that the acts and practices complained of herein are in violation of the plaintiff's rights as secured by the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. and/or the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615, et seq.

(b)    Requiring the defendant Tenneco Automotive Operating Company, Inc. to reinstate the plaintiff to a position of equal duties and responsibilities, with equal pay and benefits, as the plaintiff would have received but for the discriminatory and/or retaliatory conduct under the ADA and/or the conduct violative of the FMLA, or in the alternative for an award of front pay;

(c)    Preliminarily and permanently restraining and enjoining the defendant and its owners, officers, management personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any conduct violating the plaintiff's rights as secured by the Americans With Disabilities Act and/or the Family and Medical Leave Act;

(d)    Awarding the plaintiff back pay, prejudgment interest and appropriate recovery for lost employment benefits, and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost;

(e)    Awarding the plaintiff compensatory and punitive damages in an amount equal to $300,000.00 under the ADA;

(f)    Awarding the plaintiff liquidated damages pursuant to 29 U.S.C. § 2617;

(g)    Awarding the plaintiff his attorney's fees and costs incurred in this action, including expert witness fees and expenses; and

(h)    Ordering any other relief this court deems to be just and proper.

RICHARD B. PENCE
By:  Counsel

Timothy E. Cupp, VSB. No. 23017
Cupp & Cupp, P.C.
1951 Evelyn Byrd Avenue, Suite D
P.O. Box 589
Harrisonburg, Virginia 22803
(540) 432-9988
(540) 432-9557 (Facsimile)
Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

The plaintiff, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action this 25rh day of August, 2004.

Timothy E. Cupp
Counsel for Plaintiff