CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 2 6 2005

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| RICHARD B. PENCE,<br>    Plaintiff,<br><br>v.<br><br>TENNECO AUTOMOTIVE<br>OPERATING COMPANY, INC.,<br>    Defendant. | Case No. 5:04cv00075<br><br>**MEMORANDUM OPINION**<br><br>BY: Samuel G. Wilson<br>United States District Judge |

This is an action under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., ("ADA") and the Family and Medical Leave Act, 29 U.S.C. § 2615 et seq. ("FMLA"), by Richard B. Pence against his former employer, Tenneco Automotive Operating Company, Inc. ("Tenneco"). Pence contends that Tenneco terminated his employment because it regarded him as disabled, forced him to undergo a psychological evaluation, and discharged him in retaliation for protected activity, all in violation of the ADA. Pence also alleges that Tenneco refused to reinstate him in violation of the FMLA. This matter is before the court on the defendant's motion for summary judgment. Tenneco contends that it fired Pence because it believed he threatened violence, not because it regarded him as disabled. Pence has not presented evidence from which a jury could conclude that Tenneco was motivated by discriminatory animus or that Tenneco's proffered reason for terminating Pence is pretextual. Further, there is no evidence that Pence met the threshold requirements for leave under the FMLA. The court therefore grants the defendant's motion for summary judgment on all of Pence's claims.

II.

Tenneco employed Pence as a welder in its Harrisonburg, Virginia plant from January 19, 1972, until it terminated him on December 22, 2003. On October 17, 2003, Pence spoke with Evelyn Burner, a nurse at the plant. Burner claims that Pence threatened that "when he [left] here he [would] be taking a bunch of people with him," and that "he [had] AK's and more ammo than Rockingham County."

Shortly after their conversation, on October 20, 2003, Burner sent an email to Rod Little, Tenneco's human resources manager, memorializing Pence's statements and her belief that Pence was a threat. That same day, Little and Burner reported Pence's purported threat to the Harrisonburg police and consulted Tenneco's director of human resources, as well as its in-house legal counsel. Little also notified Tenneco's security consultant of Pence's purported threat. The next day, Tenneco placed Pence on paid leave and referred him to Tenneco's Employee Assistance Program ("EAP") for mandatory counseling and evaluation.

Pence contacted a representative of the EAP as directed and met with a licensed clinical psychologist on October 23 and 30 and November 3, 2003. The psychologist found that Pence "denied any [symptoms] consistent with an emotional or mental condition." Because he found no diagnosable mental condition, the psychologist did not complete any FMLA paperwork for Pence, and on November 21, 2003, Tenneco informed Pence that his leave did not qualify as leave for a "serious medical condition" under the FMLA. Pence responded that he had not requested FMLA leave and that he wished to withdraw any such request because he was "not in need of medical leave." At some point between November 3 and November 21, Pence also informed Tenneco that he believed its actions violated the ADA and the FMLA and that he had retained legal counsel to pursue the matter. Also on November 21, 2003, in a telephone

2

conference, representatives of the EAP informed Tenneco that they believed Pence was a threat to the safety of Tenneco employees.[1] On December 22, 2003, Tenneco terminated Pence's employment.

Pence denies having made a threat and contends that Burner misinterpreted his comments. He claims that Tenneco terminated him because it regarded him as disabled; that Tenneco required him to undergo a mental examination that was not job related and consistent with business necessity; that Tenneco terminated him in retaliation for protected activity; and that Tenneco violated the FMLA when it refused to reinstate him following medical leave.

## II.

Tenneco is entitled to summary judgment on Pence's ADA wrongful termination claim because Pence has not marshaled evidence from which a jury could draw an inference of discrimination.[2] To establish a prima facie case of wrongful termination under the ADA, Pence must show that (1) he has a disability or is "regarded as" having a disability, (2) he is a "qualified individual," and (3) in "discharging" him, his employer "discriminated against [him] because of

---

[1] The members of the EAP advising Tenneco did not provide a medical diagnosis or medical information concerning Pence.

[2] Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials before the court indicates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All facts must be viewed in the light most favorable to the non-moving party and all inferences drawn in his favor. The burden is on the movant to establish that no material factual disputes exist. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When "the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances," the court must grant summary judgment. Campbell v. Hewitt, Coleman & Assoc., 21 F.3d 52, 55 (4th Cir. 1994).

3

[his] disability." 42 U.S.C. § 12112(a) (1994); see also, Doe v. University of Maryland Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995). Pence does not maintain that he is, in fact, disabled, and his evidence is not sufficient for a jury to conclude that Tenneco "regarded him as" being disabled.

To prevail, Pence must establish that Tenneco "perceived him as being disqualified from a broad variety of jobs." Haulbrook v. Michelin N. Am. Inc., 252 F.3d 696, 704 (4th Cir. 2001). Pence argues that Tenneco "viewed him as having homicidal and suicidal traits" that disqualified him from working at the plant. As support for this proposition, he cites Tenneco's placing him on medical leave and referring him to the EAP for counseling. However, Tenneco's request for a mental evaluation is not sufficient to establish that it regarded Pence as disabled. See Terry v. City of Greensboro, 2003 U.S. Dist. LEXIS 869, *12 (M.D.N.C. 2003) (noting that "a request for an evaluation, without more, does not prove that the employer perceives the employee to have an impairment that substantially limits one or more of the employee's major life activities"); see also Cody v. Cigna Healthcare of St Louis, Inc., 139 F.3d 595, 599 (8th Cir. 1998). Furthermore, the uncontradicted evidence establishes that not only did the EAP's psychologist fail to find any mental impairment that would disqualify Pence from a broad range of jobs, but when the EAP representatives warned Tenneco that Pence was a potential threat, they did not offer any medical diagnosis, focusing instead on the safety of Tenneco employees. These undisputed facts dispel any notion that Tenneco perceived him as having a mental impairment. Pence's evidence is not sufficient for a reasonable jury to conclude that Tenneco regarded him as disabled within the meaning of the ADA.

Alternatively, even had Tenneco "regarded him as" disabled, the uncontradicted evidence

4

shows that Tenneco terminated Pence because it believed he had violated a workplace rule by making threats. While the ADA prohibits employers from taking adverse action because of an employee's disability, it does not prevent employers from taking action as a result of an employee's misconduct or perceived misconduct. See Jones v. American Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999) ("The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability."); Martinson v. Kinney Shoe Corp., 104 F.3d 683, n.3 (4th Cir. 1997) ("Misconduct – even misconduct related to a disability – is not itself a disability, and an employer is free to fire an employee on that basis."); Palmer v. Circuit Court of Cook County, 905 F. Supp. 499, 511 (N.D. Ill. 1995) ("An employer must be permitted to terminate its employee on account of egregious misconduct, irrespective of whether the employee is disabled.").

Here, Tenneco claims that it terminated Pence because it believed he had violated a workplace rule prohibiting threats. After Burner informed Tenneco that Pence had threatened violence, Tenneco responded by removing Pence from the workplace, consulting with its security firm, and referring Pence to its EAP to determine whether he was a safety threat. After the EAP informed Tenneco it believed Pence was a threat to the safety of other employees, Tenneco terminated his employment. Other than his own conclusory statements, Pence has marshaled no evidence that his perceived disability was a determining factor in his termination. See Ennis v. Nat'l. Assoc. of Business and Educational Radio, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation...is not enough to defeat a summary judgment motion.").

Pence contends that Burner misinterpreted his comments. The point is immaterial,

5

however, because in determining whether or not Tenneco violated the ADA the crucial inquiry focuses on Tenneco's motivation: whether it terminated him because it regarded him as being disabled. Therefore, the question is not whether Pence actually made threats; rather, it is whether Tenneco believed that he made them. See Morris v. BellSouth Telecom., 302 F. Supp. 2d 515, 523 (M.D.N.C. 2003) (citing Holder v. City of Raleigh, 867 F.2d 823, 829 (4th Cir. 1989)). Pence does not dispute that, shortly after their conversation, Burner notified Tenneco's senior human resources manager by email that Pence told her "that when he leaves here he will be taking a bunch of people with him . . . and that he has AK's and more ammo than Rockingham County." Tenneco's actions immediately following Burner's email were consistent with its belief that Pence had made a threat. Tenneco immediately contacted a security consultant and informed the Harrisonburg police of Burner's allegations.

While Pence argues at length that Tenneco referred him to the EAP because it believed he was mentally ill, he sets forth no facts, other than bald assertions, from which a reasonable fact finder could draw an inference of discriminatory intent. Viewed from whatever quarter, the only reasonable conclusion to be drawn from the evidence is the conclusion that Tenneco believed that Pence threatened violence, and it took that threat seriously.[3] Because Pence has not

---

[3] Pence claims that Tenneco misinterpreted his statements as threatening because it erroneously believed that he had a serious mental disorder. However, the statements Burner relayed to Tenneco are unequivocally threatening. An employer is entitled to take action in response to misconduct – even if that misconduct is related to a disability (or a perceived disability). See, e.g., Hamilton v. Southwestern Bell, 136 F.3d 1047, 1052 (5th Cir. 1998) (affirming summary judgment for the defendant because the plaintiff had violated employer's policy against workplace violence and "the ADA does not insulate emotional or violent outbursts blamed on an impairment"). Therefore, even assuming, without deciding, that Tenneco believed Pence's comments arose from a mental disability, it was nevertheless permitted to terminate him for misconduct.

6

marshaled evidence from which a reasonable jury could conclude that Tenneco was motivated by discriminatory animus, summary judgment for Tenneco on Pence's wrongful termination claim is appropriate.

### III.

Pence's retaliation claim similarly fails. To establish a prima facie claim for retaliation under the ADA, Pence must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. See Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001). Pence claims that he told Tenneco, at some point between November 3 and November 21, 2003, that he believed Tenneco had violated the ADA and the FMLA and that he had retained legal counsel and intended to pursue legal action. He argues that the close temporal connection between this protected activity and his termination on December 22, 2003, establishes causation sufficient to establish a prima facie case of retaliation. The court rejects the argument, however, because a close temporal relationship between protected activity and a firing is meaningless when there is an equally close temporal relationship between the nondiscriminatory reason for the firing – Pence's threat – and the firing. Pence cannot insulate himself from firing by retaining counsel and threatening to sue.

Even if Pence had set forth evidence sufficient to establish a prima facie case, however, he has nevertheless failed to produce evidence from which a jury could find that Tenneco's legitimate nondiscriminatory reason for his termination, that is, a threat of violence that Tenneco took seriously, was a pretext for unlawful discrimination. Because Pence has not marshaled evidence from which a jury could conclude that Tenneco's proffered reason for his discharge was

7

false and that unlawful retaliation was the true reason, the court grants Tenneco's motion for summary judgment.

## IV.

Tenneco is also entitled to summary judgment on Pence's claim that Tenneco forced him to undergo a mental examination in violation of the ADA. An employer's request that an employee undergo a mental or physical evaluation does not give rise to an ADA claim if it is "job related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(a). In the case of employee misconduct, "employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." Cody, 139 F.3d at 598. Where an employee's actions give rise to concern for the safety of the workplace, an inquiry into the employee's mental or physical well-being is "job related and consistent with business necessity." See Krocka v. City of Chicago, 203 F.3d 507, 515 (7th Cir. 2000) (holding that "where inquiries into the psychiatric health of an employee. . . reflect a concern with the safety of employees, the employer may . . . require certain medical information from the employee."). Here, Burner's report regarding Pence's threatening statements raised a legitimate security concern, and Tenneco referred Pence to the EAP to address that concern. Pence offers nothing to contradict Tenneco's proffered reason for referring him to the EAP and, under these circumstances, Tenneco's action was "entirely reasonable." Id. Accordingly, the court grants summary judgment to the defendant on this claim.

## V.

Finally, Pence claims that Tenneco violated the FMLA by failing to reinstate him and by

8

terminating him in retaliation for challenging its action.[4] Pence's claim fails because there is no evidence from which a jury could find that he was eligible for leave under the FMLA or that he even requested FMLA leave. After placing Pence on paid leave, Tenneco forwarded its standard FMLA paperwork to him on October 21, 2003. On November 3, 2003, after meeting with Pence, the EAP's psychologist refused to complete the FMLA paperwork for Pence because he found no diagnosable mental condition that would qualify Pence for leave under the FMLA. See 29 U.S.C. § 2611(11) (defining "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care. . . or (B) continuing treatment by a health care provider"). Moreover, Pence does not dispute that he wrote a letter to Tenneco on November 21, 2003, stating that he did not request FMLA leave and withdrawing any such previous request because he was "not in need of medical leave." See 29 C.F.R. § 825.302(c) ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave."). In sum, Tenneco's duties under the FMLA were never triggered because Pence did not comply with the threshold requirements of the statute. See, e.g., Peeples v. Coastal Office Prods., 203 F. Supp. 2d 432, 455 (D. Md. 2002) (granting summary judgment for defendant-employer where employee did not satisfy the threshold notice requirements imposed by the FMLA); aff'd by Peeples v. Coastal Office Prods., 2003 U.S. App. LEXIS 8644 (4th Cir. 2003). Because its obligation never arose, Tenneco did not, indeed could not, violate the statute, and summary judgment in its favor is appropriate.

In addition, even if Pence were able to establish that he was entitled to, and requested,

---

[4]Pence has moved for partial summary judgment on his FMLA claim. Because Tenneco's obligations under FMLA never arose, for the reasons stated, the court denies Pence's motion.

9

FMLA leave, his claim fails because he had no right to his welder position. The FMLA does not insulate employees from legitimate disciplinary action by the employer. An employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position of employment to which [he] would have been entitled had [he] not taken the leave." 29 U.S.C. § 2614(3)(B). Here, the uncontradicted evidence shows that Tenneco had a legitimate, nondiscriminatory reason justifying Pence's termination. Pence was therefore not entitled to reinstatement to his welder position. Furthermore, there is no evidence from which a jury could conclude that Tenneco's legitimate nondiscriminatory reason was a pretext for unlawful retaliation. Summary judgment for the defendant on both aspects of the FMLA claim is therefore appropriate.

## VI.

For the reasons stated, the court finds that there is no genuine issue of material fact and Tenneco is entitled to judgment as a matter of law, and accordingly grants summary judgment in its favor on all claims.

**ENTER**: This 26th day of April, 2005.

_____
UNITED STATES DISTRICT JUDGE